Justice Souter,
concurring in the judgment.
I agree with the Court that the Ten Commandments monument is government speech, that is, an expression of a government’s position on the moral and religious issues raised by the subject of the monument. See Board of Regents of Univ. of Wis. System v. Southworth, 529 U. S. 217, 235 (2000) (noting government speech may “promote [government’s] own policies or . . . advance a particular idea”). And although the government should lose when the character of the speech is at issue and its governmental nature has not been made clear, see Johanns v. Livestock Marketing Assn., 544 U. S. 550, 577 (2005) (Souter, J., dissenting), I also agree with the Court that the city need not satisfy the particular formality urged by Summum as a condition of recognizing that the expression here falls within the public category. I have qualms, however, about accepting the position that public monuments are government speech categorically. See ante, at 470-471 (“Just as government-commissioned and government-financed monuments speak for the government, so do privately financed and donated monuments that the government accepts and displays to the public on government land”);
Because the government speech doctrine, as Justice Stevens notes, ante, at 481 (concurring opinion), is “recently minted,” it would do well for us to go slow in setting its bounds, which will affect existing doctrine in ways not yet explored. Even though, for example, Establishment Clause issues have been neither raised nor briefed before us, there *486 is no doubt that this case and its government speech claim has been litigated by the parties with one eye on the Establishment Clause, see ante, at 482 (Scalia, J., concurring). The interaction between the “government speech doctrine” and Establishment Clause principles has not, however, begun to be worked out.
The case shows that it may not be easy to work out. After today’s decision, whenever a government maintains a monument it will presumably be understood to be engaging in government speech. If the monument has some religious character, the specter of violating the Establishment Clause will behoove it to take care to avoid the appearance of a flatout establishment of religion, in the sense of the government’s adoption of the tenets expressed or symbolized. In such an instance, there will be safety in numbers, and it will be in the interest of a careful government to accept other monuments to stand nearby, to dilute the appearance of adopting whatever particular religious position the single example alone might stand for. As mementoes and testimonials pile up, however, the chatter may well make it less intuitively obvious that the government is speaking in its own right simply by maintaining the monuments.
If a case like that occurred, as suspicion grew that some of the permanent displays were not government speech at all (or at least had an equally private character associated with private donors), a further Establishment Clause prohibition would surface, the bar against preferring some religious speakers over others. See Wallace v. Jaffree, 472 U. S. 38, 113 (1985) (Rehnquist, J., dissenting) (“The Clause was also designed to stop the Federal Government from asserting a preference for one religious denomination or sect over others”). But the government could well argue, as a development of government speech doctrine, that when it expresses its own views, it is free of the Establishment Clause’s stricture against discriminating among religious *487 sects or groups. Under this view of the relationship between the two doctrines, it would be easy for a government to favor some private religious speakers over others by its choice of monuments to accept.
Whether that view turns out to be sound is more than I can say at this point. It is simply unclear how the relatively new category of government speech will relate to the more traditional categories of Establishment Clause analysis, and this case is not an occasion to speculate. It is an occasion, however, to try to keep the inevitable issues open, and as simple as they can be. One way to do that is to recognize that there are circumstances in which government maintenance of monuments does not look like government speech at all. Sectarian identifications on markers in Arlington Cemetery come to mind. And to recognize that is to forgo any categorical rule at this point.
To avoid relying on a per se rule to say when speech is governmental, the best approach that occurs to me is to ask whether a reasonable and fully informed observer would understand the expression to be government speech, as distinct from private speech the government chooses to oblige by allowing the monument to be placed on public land. This reasonable observer test for governmental character is of a piece with the one for spotting forbidden governmental endorsement of religion in the Establishment Clause eases. See, e. g., County of Allegheny v. American Civil Liberties Union, Greater Pittsburgh Chapter, 492 U. S. 573, 630, 635-636 (1989) (O’Connor, J., concurring in part and concurring in judgment). The adoption of it would thus serve coherence within Establishment Clause law, and it would make sense of our common understanding that some monuments on public land display religious symbolism that clearly does not express a government’s chosen views.
Application of this observer test provides the reason I find the monument here to be government expression.